UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| ENNIS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:26-cv-00390-TWP-MJD |
| | ) | |
| BRIAN LEWIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

**REPORT AND RECOMMENDATION**

This matter is before the Undersigned on Defendant Channeled Resources Group's

Motion to Transfer Venue.  [Dkt. 23.]  On April 7, 2026, District Judge Tanya Walton Pratt

designated the Undersigned to issue a report and recommendation regarding the disposition of

the motion pursuant to 28 U.S.C. § 636(b)(1)(B).  [Dkt. 41.]  For the reasons set forth below, the

Undersigned recommends Defendant's motion be **GRANTED**.

**I.  Background**

The following facts are alleged in Plaintiff's Verified Complaint for Preliminary and

Permanent Injunction and Damages, [Dkt. 1-2].  On April 1, 2023, Defendant Brian Lewis

entered into an employment agreement ("Employment Agreement") with Printing Technologies,

Inc. ("PTI"), an Indiana corporation, to serve as PTI's Vice President of Sales.  PTI's assets were

acquired by Plaintiff in June 2024.  Plaintiff assumed the Employment Agreement and retained

Lewis as an employee after the acquisition.  On April 2, 2025, Lewis executed Plaintiff's

standard confidentiality agreement ("Confidentiality Agreement").  In August 2025, Lewis

resigned from his employment with Plaintiff and went to work for Defendant Channeled Resources Group ("CRG").  Plaintiff and CRG are competitors.

Plaintiff filed suit in the Marion County, Indiana, Superior Court on February 6, 2026; CRG removed the case to this court on February 25, 2026, with Lewis's consent.  [Dkt. 1.] Plaintiff alleges that Lewis has violated various provisions of the Confidentiality Agreement and the Employment Agreement by the work he is performing for CRG, including soliciting business from three of Plaintiff's customers:  Imprint Enterprises, Peak Technologies, and Barcodes.  [Dkt. 1-2.]  Plaintiff asserts claims against Lewis for breach of contract, a claim against CRG for tortious interference with contract, and claims against both Defendants for violation of Indiana's Uniform Trade Secrets Act.  *Id.*

## II.  Discussion

In the instant motion, CRG argues that this case should be transferred to the Northern District of Illinois pursuant to 28 U.S.C. § 1404(a), which provides:  "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought or to any district or division to which all parties have consented."[1]  Lewis has not filed a response to the motion.  Plaintiff objects to it.

"[S]ection 1404(a) is intended to place discretion in the district court to adjudicate motions for transfer according to a case-by-case consideration of convenience and fairness.  By the same token, [appellate courts] grant a substantial degree of deference to the district court in deciding whether transfer is appropriate."  *Research Automation, Inc. v. Schrader-Bridgeport Int'l, Inc.*, 626 F.3d 973, 977-78 (7th Cir. 2010) (internal citations and punctuation omitted).

---

[1] There is no dispute that this case could have been filed in the Northern District of Illinois.

"When deciding whether to transfer a case under § 1404(a), a district court . . . 'must evaluate both the convenience of the parties and various public-interest considerations.'" *In re Ryze Claims Sols., LLC*, 968 F.3d 701, 707-08 (7th Cir. 2020) (quoting *Atlantic Marine Construction Co., Inc. v. United States District Court for the Western District of Texas*, 571 U.S. 49, 62 & n.6 (2013)). "When considering whether to transfer a case, a court must engage in a 'flexible and individualized analysis' and 'look beyond a narrow or rigid set of considerations in their determinations.'" *Id.* at 708 (quoting *Research Automation*, 626 F.3d at 978 (in turn quoting *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

### A. Convenience Evaluation

"With respect to the convenience evaluation, courts generally consider the availability of and access to witnesses, and each party's access to and distance from resources in each forum. . . . Other related factors include the location of material events and the relative ease of access to sources of proof." *Research Automation*, 626 F.3d at 978 (citations omitted).

As a starting point in considering the relevant factors, the Undersigned notes that none of the parties to this case are citizens of Indiana. Plaintiff is a Texas corporation with its principal place of business in Texas; CRG is an Illinois corporation with its principal place of business in the Northern District of Illinois; and Lewis is a citizen of South Carolina. [Dkt. 1 at 4.] As a general matter, the Northern District of Illinois is clearly more convenient for CRG and no more or less convenient for Plaintiff than this district.

Plaintiff argues that its choice of forum "carries great weight." [Dkt. 39 at 2.] Actually, the Supreme Court has stated that a court "must also give **some weight** to the plaintiffs' choice of forum." *Atl. Marine Const. Co.*, 571 U.S. at 62 n.6 (emphasis added) (citing *Norwood v. Kirkpatrick,* 349 U.S. 29, 32 (1955)). But even the case cited by Plaintiff acknowledges that "the

plaintiff's choice is entitled to less deference and the defendant's residence becomes more important in determining the convenience to the parties when the forum the plaintiff chooses is not her home forum." *Fetter v. Fetter*, 2023 WL 4269855, at *3 (S.D. Ind. June 29, 2023). Indiana is not Plaintiff's home forum. *See* 28 U.S.C. § 1391(c)(2) (for venue purposes, a plaintiff that is a corporation resides "only in the judicial district in which it maintains its principal place of business"). Plaintiff's desire to litigate in Indiana[2] is just one factor among many to be considered in resolving the instant motion.

Next, the wrongful acts alleged in the Complaint all took place while Lewis was employed by CRG. None of the evidence relevant to those acts will be located in this district, and much of it will be located in the Northern District of Illinois. As noted above, the Complaint names three customers of Plaintiff that Lewis allegedly solicited on behalf of CRG; none of them are located in this district, and two of them have ties to the Northern District of Illinois. *See* [Dkt. 23 at 3-4] (noting that Imprint Enterprises' website states that it "'has provided businesses in the Chicago and Minneapolis-St. Paul area' with services and products and maintains an office at 555 N. Commons Drive, Aurora, Illinois," Barcodes LLC has its principal place of business in Chicago, and Peak Technologies is an LLC organized under the laws of New Hampshire with its principal place of business in Massachusetts). As CRG points out, employees from these three companies are likely to be non-party witnesses in this case, and the Northern District of Illinois is clearly more convenient than this district for two of them, and no less convenient for the third. While Plaintiff states in its response brief that witnesses from those companies "are not necessarily required when the relevant information those witnesses might offer is also readily

---

[2] The venue analysis largely concerns geographical convenience and geographical connection to the case, so Plaintiff's desire to litigate in Indiana, not Illinois, is relevant, even though Plaintiff filed this case in Indiana state court rather than in this court.

available from documents in the possession of Defendants CRG and Lewis," [Dkt. 39 at 3-4], it would be the unusual plaintiff indeed who would be satisfied solely with evidence from the alleged wrongdoers when additional relevant evidence was available elsewhere.

That said, there will likely also be some relevant evidence and witnesses in Indiana, as Plaintiff points out, such as "information regarding the trade secrets and the goodwill of PTI[3] and the harm being incurred by Defendants' ongoing breaches." [Dkt. 39 at 4.] And the Undersigned agrees with Plaintiff that the location of documents is no longer a substantial consideration in the convenience analysis, given the manner in which discovery is conducted today. *See* [Dkt. 39 at 5] ("In the contemporary legal landscape, where corporate records and proprietary data are maintained in cloud-based repositories and accessible instantaneously from any jurisdiction, the physical location of a server or a corporate headquarters carries negligible weight in the § 1404(a) analysis.") (citing *Commissioning Agents, Inc. v. Long*, 187 F. Supp. 3d 980, 989 (S.D. Ind. 2016)). Overall, then, the factors relating to the availability of and access to witnesses and evidence weighs mostly, although not entirely, in favor of transfer.

Finally, Plaintiff asserts that "[t]he events, including Lewis' blatant breach of his employment and confidentiality agreements, occurred where the harm was and is being felt (Indiana), not where Lewis is working today (remotely from North Carolina)."[4] [Dkt. 39 at 4.] That is simply not the case. There is no allegation that Lewis took any improper action in Indiana whatsoever; at most, he executed one of the two contracts at issue with an Indiana company and then worked for that Indiana company for a time. Lewis allegedly breached his

---

[3] The Undersigned assumes that by "PTI" Plaintiff is referring to Plaintiff's business location in Indiana. While that business location may be operating with the name PTI, the goodwill and trade secrets at issue are no longer owned by a legal entity called PTI; they are owned by Plaintiff.

[4] It appears that Lewis actually works remotely from South Carolina.

agreements with a Texas company (Plaintiff) by going to work for a competing Illinois Company (CRG) and misappropriating trade secrets owned by the Texas company to solicit the business of three customers of the Texas company, none of whom are located in Indiana. Thus, none of the events relevant to the alleged wrongdoing by both Lewis and CRG occurred in Indiana, and many of them took place in, or at least have connections to, the Northern District of Illinois. Therefore, the location of material events factor clearly weighs in favor of transfer.

Having weighed the relevant factors, the Undersigned finds that overall the convenience of the parties and the witnesses would clearly be better served by transferring this case to the Northern District of Illinois.

### B. Public-Interest Considerations

Turning to the public-interest considerations, "[i]n determining whether the transfer would be in the 'interest of justice,' a court may consider several factors, including 'docket congestion and likely speed to trial in the transferor and potential transferee forums,' 'each court's relative familiarity with the relevant law,' 'the respective desirability of resolving controversies in each locale,' and 'the relationship of each community to the controversy.'" *In re Ryze Claims Sols., LLC,* 968 F.3d 701 at 708 (quoting *Research Automation,* 626 F.3d at 978).

With regard to docket congestion and speed of resolution, for the twelve-month period ending December 31, 2025, the most relevant statistics are as follow:

|  | Southern District of Indiana | Northern District of Illinois |
|---|---|---|
| Pending cases per judgeship | 2203 | 1169 |
| Civil filings per judgeship | 783 | 733 |
| Median time from filing to disposition (civil cases) | 10.1 months | 6.2 months |

6

| Median time from filing to trial (civil cases) | 36.5 months | 52.5 months |
|---|---|---|

*See* https://www.uscourts.gov/sites/default/files/document/fcms_na_distprofile1231.2025.pdf.

Both districts are clearly busy, but this district's "docket congestion" is significantly worse and, consistent with that fact, except for the relatively rare civil case that goes to trial,[5] a case is likely to be resolved more quickly in the Northern District of Illinois.

As for each court's relative familiarity with the relevant law, Plaintiff points to the choice-of-law provision in the Employment Contract that states that it is governed by Indiana law and argues that this court "has greater expertise in the specific nuances of Indiana law." [Dkt. 39 at 5.] This district is perhaps more familiar with Indiana law, but the Northern District of Illinois is certainly no stranger to it and certainly as able to apply it as this district. And in any case, given Indiana's lack of connection to the misconduct alleged in the Complaint, it is not at all clear what state's law will apply to the numerous claims in this case that are not based on breach of the Employment Contract.

Finally, with regard to the relationship of each community to the controversy, the only relationship that Indiana has to this case is the fact that one of the two contracts at issue was entered into between Lewis and an Indiana corporation. However, that Indiana corporation is not a party to this case; indeed, there is no longer an Indiana corporation with that name.

---

[5] The Undersigned notes that in the Northern District of Illinois, 671 cases were terminated per judgeship in the twelve-month period ending December 31, 2025, and nine trials were completed per judgeship during that same period. For this district, those numbers are 897 and 11. While these statistics include both civil and criminal cases, it demonstrates the very small percentage of cases that are resolved by trial in either district.

Further, as noted above, none of the alleged misconduct occurred while Lewis worked for that Indiana corporation, as he became an employee of Plaintiff before any of the alleged misconduct took place.

Based on this analysis of the relevant factors, it is clear that the public-interest factors weigh in favor of transfer.  Plaintiff's arguments to the contrary are unconvincing. Plaintiff argues that "Indiana has a strong, recognized interest in regulating the employment practices of companies within its borders and adjudicating disputes arising from relationships formed therein." [Dkt. 39 at 3.]   However, in both of the cases cited by Plaintiff, the plaintiff's chosen forum was "the site of the development of the business relationship as well as much of the business misconduct." [Dkt. 39 at 3] (citing *Fetter*, 2023 WL 4269855, at \*4 and *Am. Com. Lines, LLC v. Ne. Mar. Inst., Inc.*, 588 F. Supp. 2d 935, 945 (S.D. Ind. 2008)).  Only the former is true here.  As has already been noted, none of the alleged misconduct occurred in Indiana and Lewis was no longer employed by an Indiana entity when he went to work for CRG.  In fact, only one of the two agreements at issue was executed by an Indiana company, and that Indiana company is not the plaintiff trying to enforce its terms in this case.  Indeed it could not be, because, as a result of Plaintiff's asset purchase, by the time the alleged breach occurred that Indiana company was no longer a separate legal entity; it had become simply an Indiana location of a Texas company, and it was that Texas company that felt any harm from the breach.[6]  Given that fact, Indiana's connection to the events relevant to this case is quite weak.

---

[6] Plaintiff asserts that "in cases involving the misappropriation of trade secrets and the erosion of corporate goodwill, the situs of material events and the resulting injury are centered where the targeted business asset resides." [Dkt. 39 at 5.]  Plaintiff cites to no authority for that proposition; nor does Plaintiff provide any analysis as to why that would be so for purposes of venue.  "Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority." *See Schaefer v. Universal Scaffolding & Equip., LLC*, 839 F.3d 599, 607 (7th Cir. 2016) (citing *United States v. Hook*, 471 F.3d 766, 775 (7th Cir. 2006)).  In any event, given

### III. Conclusion

As set forth above, based on the analysis of the relevant factors, it is clear that both the convenience factors and the public-interest factors weigh in favor of transfer to the Northern District of Illinois.  Accordingly, the Undersigned **RECOMMENDS** that Defendant Channeled Resources Group's Motion to Transfer Venue, [Dkt. 23], be **GRANTED**.  In light of this recommendation, the remaining pending motions will be held in abeyance so that, if the case is transferred as recommended, those motions can be resolved by the transferee court.

Any objections to this Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), and failure to timely file objections within fourteen days after service shall constitute a waiver of subsequent review absent a showing of good cause for such failure.

SO ORDERED.

Dated:  21 APR 2026

Mark J. Dinsmore
United States Magistrate Judge
Southern District of Indiana

Distribution:

Service will be made electronically on all
ECF-registered counsel of record via email
generated by the Court's ECF system.

---

that Plaintiff "resides" in Texas for venue purposes, as discussed above, it follows that any trade secret or goodwill owned by Plaintiff would "reside" in Texas as well and any injury to Plaintiff would be felt in Texas.  Further, "[t]he situs of material events in a breach of contract claim is 'where the business decisions causing the breach occurred.'" *Chandra V. Pharm. Consultants, LLC v. Bausch Health Ireland Ltd.*, 2024 WL 4751280, at *2 (N.D. Ill. Nov. 12, 2024) (quoting *Hyatt Corp. v. Pers. Commc'ns Indus. Ass'n*, 2004 WL 2931288, at *3 (N.D. Ill. Dec. 15, 2004); *see also Hinc v. Lime-O-Sol Co.*, 231 F. Supp. 2d 795, 796 (N.D. Ill. 2002)). There is no suggestion that either Defendant made any decision in Indiana that was relevant to the alleged breach of contract claims.